**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CARRIE S.,[1] | Case No. 1:20-cv-1026 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Carrie S. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff asserts two closely related claims of error.  The Commissioner has filed a response in opposition, to which Plaintiff filed no reply.   For the reasons stated below, I conclude that the ALJ's decision should be AFFIRMED because it is supported by substantial evidence in the record.

**I.  Summary of Administrative Record**

On April 20, 2017, Plaintiff filed applications seeking both disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]  In both applications, Plaintiff alleged a disability onset date of April 15, 2016 based upon back and knee problems,

---

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.
[2]It appears that Plaintiff previously filed (unsuccessful) applications on June 12, 2008 and on September 21, 2012.  (Tr. 81).

1

seizures, hearing loss in her right ear, bipolar disorder, depression, and fibroid tumors. (Tr. 334). Plaintiff tied her disability onset date to a work injury sustained at Lowe's. After Plaintiff's applications were denied initially and upon reconsideration, she sought an evidentiary hearing. On January 28, 2020, Plaintiff appeared, through counsel, and gave testimony before Administrative Law Judge ("ALJ") Jeffrey Hartranft; a vocational expert also testified. (Tr. 48-77).

Plaintiff was 43 years old on her alleged disability onset date, and changed age category to age 45-49, though still a younger individual, at the time of the ALJ's decision. She is single, with a high school education, and testified that she lives in a home with her parents. (Tr. 54). She has past relevant work as a building supply salesperson (most recently at Lowe's), as an assistant manager, and as a candle wicker. (Tr. 55-57).

On March 10, 2020, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 16-32). The ALJ determined that Plaintiff has severe impairments of: "degenerative disc disease of the lumbar and thoracic spine, degenerative joint disease of the bilateral knees status post surgery, seizure disorder, headaches, obesity, persistent depressive disorder with pure dysthymic disorder, bipolar disorder, generalized anxiety disorder, and a history of a specific learning disability." (Tr. 19). By contrast, the ALJ found Plaintiff's alleged impairments of mild restrictive airway disease, recurrent acute external otitis, tinnitus, mild obstructive sleep apnea, mixed urinary incontinence, renal stones, plantar fasciitis, and fibroids were nonsevere. (*Id.*) Plaintiff does not dispute the ALJ's determination of which impairments were severe or non-severe, nor does she challenge his determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part

2

404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

The ALJ determined that Plaintiff cannot perform her past relevant work, but nevertheless found that she retains the residual functional capacity ("RFC") to perform a restricted range of unskilled sedentary work, subject to the following limitations:

> the claimant can frequently balance, and can occasionally stoop and climb ramps and stairs. She cannot kneel or crawl, and cannot crouch other than as needed to sit down and stand up. She cannot climb ladders, ropes, or scaffolds or perform commercial driving, and she would need to avoid workplace hazards, such as unprotected heights and machinery. The claimant would be capable of routine and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes. She could have occasional interaction with the general public, coworkers, and supervisors, with no customer service responsibilities and no tandem tasks.

(Tr. 22). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of document preparer, circuit board assembler, and address clerk. (Tr. 31). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred when he characterized many physical examination findings in the record as "mild," and further erred in failing to fully adopt portions of one physical functional capacity evaluation. Based upon those alleged errors, Plaintiff maintains that the hypothetical question posed to the vocational expert did not account for all of her limitations, and therefore does not constitute substantial evidence to support the non-disability determination.

3

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits

4

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. The ALJ's Assessment of Plaintiff's Physical RFC**

Plaintiff first claim of error posits that the physical RFC determined by the ALJ is not supported by substantial evidence.[3] The undersigned disagrees, and concludes that the RFC falls within a permissible "zone of choice" because it is supported by a sufficient amount of evidence that a "reasonable mind might accept as adequate" to support the RFC as determined. *See Richardson*, 402 U.S. at 401; *Felisky*, 35 F.3d at 1035.

---

[3]Plaintiff does not challenge any mental RFC findings in this judicial appeal.

5

That supporting evidence includes the RFC opinions of two agency consulting physicians: Mehr Siddiqui, M.D. and Steve McKee, M.D. On August 9, 2017, Dr. Siddiqui opined that Plaintiff could never crouch, or climb ladders, ropes or scaffolds, and could never kneel or crawl, but could stand/walk for 4 hours and sit for about 6 hours, with lifting and carrying capabilities consistent with the "light" exertional work level. (Tr. 94-95). On December 10, 2017, Dr. McKee agreed with Dr. Siddiqui's RFC assessment. (Tr. 138, 143). The ALJ rejected the physicians' opinions on Plaintiff's exertional level after concluding that due to Plaintiff's severe back and knee pain, "the record as a whole supports a reduced range of sedentary work." (Tr. 28). However, apart from reducing the exertional level to the "sedentary" level, the ALJ largely adopted the physical RFC opinions of Drs. Siddiqui and McKee including nonexertional and postural limitations.

In addition to the two physicians' opinions, the ALJ considered two functional capacity evaluations ("FCEs") from other sources.[4] The first FCE was conducted by a physical therapist approximately six months after Plaintiff's work injury, at a time when she was still working on "light duty" at Lowe's. In October 2016, Sean Brown found no manipulative limitations and opined that Plaintiff could perform work at the medium exertional level based in part on her demonstrated ability to lift 20 pounds from waist to shoulder height and thirty pounds from floor to shoulder height, with a similar demonstrated ability to carry 25 pounds. (Tr. 488). By contrast, a second evaluation

---

[4]In his review of the evidence, the ALJ applied the new regulations applicable to claims filed after March 27, 2017. See generally, 20 C.F.R. § 404.1520c. The new regulation eliminates what was formerly known as the "treating source rule" and instead focuses on a list of other factors, of which the most important are supportability and consistency. See 20 C.F.R. § 404.1520c(b)(2).

6

conducted by occupational therapist Kristy Bockrath in August 2019 concluded that that Plaintiff could perform only sedentary work, with manipulative limitations.[5]

Considering the two FCE evaluations, the ALJ rejected any manipulative limitations as inconsistent with the record but otherwise found Ms. Bockrath's restriction to sedentary work to be the most persuasive based in part on evidence that Plaintiff experiences chronic knee pain and back pain that radiates into her legs with standing and walking. (Tr. 28). The ALJ added additional postural limitations based upon the same evidence of chronic pain, as well as in consideration of Plaintiff's obesity. (Tr. 28; *see also* Tr. 25, noting BMI of greater than 40). He also added limitations based on her seizure disorder. (Tr. 29).

In support of her assertion that she is completely disabled and cannot perform even the limited range of sedentary work as determined, Plaintiff points first to her subjective complaints. However, the ALJ discounted the Plaintiff's subjective complaints after finding her "statements concerning the intensity, persistence and limiting effects of these symptoms" to be "not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 23). The ALJ specifically discussed inconsistencies between Plaintiff's testimony and the objective evidence such as imaging studies, various clinical examination findings, and her daily activities. At three different points in his opinion, the ALJ emphasized that Plaintiff's medical records "often"[6] reflected "<u>mild physical examinations with normal gait and/or strength noted, aside from some periods</u>

---

[5]As discussed below, an additional copy of the FCE form provided by Plaintiff's counsel and completed by Ms. Bockrath appears in Dr. Sharma's records. (Tr. 1380-1381). Although the FCE form is addressed to Dr. Sharma, the form is signed <u>only</u> by Ms. Bockrath. In other words, the lines on the bottom of the form for a physician's name and signature were left blank and neither Dr. Sharma's signature nor his typed name appear on the copy in his records. (Tr. 1381).
[6]According to the Meriam-Webster dictionary, the adverb "often" means frequently. *See* https://www.merriam-webster.com/dictionary/often (accessed on January 7, 2022).

of acute exacerbation in pain where the claimant is noted to have an antalgic gait or be using an assistive device or bracing." (Tr. 20; *see also* Tr. 27, 29) (emphasis added).

Plaintiff strenuously objects to the ALJ's characterization of many of her physical examinations as reflecting "mild" findings, arguing that the ALJ's depiction of the record is not substantially supported. In contrast to the ALJ's characterization, Plaintiff asserts that the record reflects "persistent and significant abnormalities on physical examinations." (Doc. 13 at 21). Citing medical records that she asserts support her subjective complaints, she maintains that the ALJ should have fully credited her testimony that she can sit for only 15-20 minutes before needing to stretch for 15 minutes (Tr. 63-64), that she uses a cane and has fallen in the past, and that if she goes to the grocery store, she is "usually down for two days after that, due to the back [pain]." (Tr. 60).

Subjective pain complaints can support disability, but cases based on allegations of disabling pain that are not wholly supported by objective evidence are often among the most difficult to resolve. That is one reason why an ALJ's assessment of subjective symptoms including pain complaints is generally given great deference.[7] *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[8] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and

---

[7]Perhaps because of the broad deference provided to ALJs in this regard, Plaintiff does not directly attack the ALJ's credibility/consistency analysis. Instead, Plaintiff indirectly takes aim at that analysis by asserting that the ALJ's description of "mild" examination findings was so far afield that it improperly caused him to discredit her subjective complaints.

[8]An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

8

contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, the ALJ discussed the inconsistencies in Plaintiff's statements, explaining that her statements were inconsistent with "the general lack of objective evidence" to support the claimed disability, and treatment notes that reflected that even at times when Plaintiff alleged high levels of pain, "she was not observed to be in significant distress, often with mild examinations and normal gait and/or strength." (Tr. 27; Tr. 460). Contrary to Plaintiff's assertion that "this finding is completely at odds with the underlying evidentiary record," (Doc. 13 at 21), the ALJ's references to clinical records frequently noting that Plaintiff was in no distress and including "mild examination" findings is well-supported by the records cited by the ALJ as well as by many of the records cited by Plaintiff in this appeal.[9]

Plaintiff's insistence that other clinical records documented "persistent and significant abnormalities" is accurate, but by omitting evidence that is less favorable, Plaintiff tells only part of the story. Unlike Plaintiff, the ALJ did not ignore but expressly acknowledged both favorable and unfavorable records, including records showing an antalgic gait or the use of a cane at times along with other abnormalities. The difference between Plaintiff's view of the record and the ALJ's review of the same record reflects a permissible weighing of the evidence. In the ALJ's view, records showing a "normal gait

---

[9]For example, in the records cited by Plaintiff to this Court, examining physicians often used the word "mild" to describe their findings. (*See*, *e.g.*, Tr. 646, "mild effusion" in left knee with no instability; Tr. 460 ("mild non-complex appearing effusion" on MRI but no effusion on exam, discomfort with ROM but no instability); Tr. 640 (can heal/toe walk with "mild amount of discomfort"); Tr. 629 (no edema, can toe walk despite "significant issues" heel walking); Tr. 618 (mildly antalgic gait); Tr. 601-02 (normal ROM/strength and only "mild" swelling); Tr. 1217 (normal lumbar lordosis with no edema and negative bilateral straight leg tests);Tr. 1205 (no effusion); Tr. 1203 (right knee full ROM, no instability, no effusion); Tr. 1195 (noting that despite history of degenerative joint disease, she is "currently doing well"); Tr. 1194 (denies difficulty waking or joint pain); Tr. 1189 ("mild" central canal stenosis).

9

and/or strength" and other "mild" findings appeared "often" or frequently enough over the entire disability period to support a modified sedentary RFC. When weighing the evidence as a whole and in context, the ALJ determined that the most "significant" abnormal findings appeared to occur "generally after an acute exacerbation." (*Id*.)

It is worth noting at this point that none of the four RFC opinions - neither the physicians' RFC opinions that found Plaintiff capable of "light work" nor the physical and occupational therapists' evaluations that, respectively, found Plaintiff capable of "medium" or "sedentary" work - found Plaintiff to be completely disabled. In other words, only Plaintiff's subjective testimony – if fully accepted – would have precluded all sedentary work. However, the ALJ discounted that testimony based upon inconsistencies between Plaintiff's testimony and records that supported some pain complaints, but not necessarily *disabling* levels of pain. For instance, despite alleging the onset of disability in mid-April 2016, Plaintiff continued to work at Lowe's on light duty until May 18, 2017. (Tr. 271). And again, notwithstanding some abnormal findings, she had normal strength, otherwise normal range of motion in her extremities on numerous occasions, no atrophy, no tremor, normal muscle tone and normal coordination. An EMG study in August 2016 was also normal. (Tr. 23).

The ALJ discussed Plaintiff's treatment records at length, including the evidence favorable to her claim. From 2017 through 2018, those records documented fairly significant subjective complaints of back pain, but those complaints contrasted at least somewhat with contemporaneous imaging studies that reflected a severity of degenerative changes that did not appear to be disabling, as well as clinical evidence that frequently demonstrated normal gait, station, tone and muscle testing. (*Id.*) The ALJ acknowledged evidence that noted that Plaintiff was walking with crutches and had

10

"moderate to severe stenosis" and a "mildly antalgic gait," (Tr. 23-24), but weighed that evidence in context of the record as a whole. (*See generally*, Tr. 23-27).

In addition to some inconsistencies with the objective and clinical records that did not fully support the level of disabling pain alleged by Plaintiff, the ALJ noted that her daily activities were inconsistent with total disability. For example, Plaintiff reported

> that she fixes her breakfast, sits down for awhile [sic], rests, and gets up and walks, but reported difficulty with standing in one place and using stairs. She indicated that chores put her down for a while, but she has hobbies, such as wood carving. During her psychological consultative examination, the claimant reported doing small crafts, reading, and sitting outside (Exhibit 11F). She socializes daily with her parents and also socializes with her aunt, uncle, and cousin. Her mother does the cleaning and they both do the cooking and shopping. She indicated she can do some cleaning tasks, but cannot sit or stand for long periods of time. Finally, the claimant was able to attend the hearing proceedings and participate in a meaningful way.

(Tr. 27-28).[10] An ALJ may "justifiably" consider a plaintiff's ability to conduct daily life activities in the face of complaints of disabling pain. *See Warner*, 375 F.3d at 392; *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990).

In sum, the undersigned has closely examined the record in this case, including each record cited by Plaintiff in this appeal. Based upon that review, the undersigned concludes that the rejection of Plaintiff's subjective complaints and characterization of the record is substantially supported, as is the physical RFC as determined.

### 2. The ALJ's Evaluation of the 2019 Functional Capacity Evaluation

---

[10]At an August 27, 2019 functional evaluation by the occupational therapist on whom Plaintiff chiefly relies, Plaintiff reported that her average pain level was a 5/10, that she takes only over the counter pain medications, that she can usually make her bed, tend to her own laundry, and sometimes helps with meals. (Tr. 1421).

11

Plaintiff's second claim is so closely related to her first that it borders on duplication. Plaintiff urges this Court to reverse based upon portions of the functional capacity evaluation performed by occupational therapist Kristy Bockrath on August 27, 2918. (Tr. 1380-1381). Even though the ALJ accepted Ms. Bockrath's opinion that Plaintiff was capable of sedentary work, Plaintiff argues that the ALJ erred in three ways: (1) by improperly citing or relying upon "mild" physical examination findings; (2) by mischaracterizing Ms. Bockrath's opinions; and (3) by focusing on the upper extremity limitations cited by Ms. Bockrath.

As for the first alleged error, the undersigned refers to the above discussion explaining why the ALJ's characterization of the record is substantially supported. With respect to the second alleged error, Plaintiff more specifically complains that the ALJ failed to address Ms. Bockrath's opinion that Plaintiff cannot stoop because she lacks the necessary range of motion, and can sit only for 20 minutes at one time. (Doc. 13 at 25-26). Plaintiff contends that "the ALJ has not addressed" any stooping or sitting limitations. (Doc. 13 at 26). But the ALJ *did* address both stooping and sitting in the RFC. Specifically, the physical RFC assessed by the ALJ allows for "occasional" stooping but no crouching "other than as needed to sit down and stand up." As the Commissioner points out, Ms. Bockrath's differing opinion that Plaintiff could not stoop (based upon her one-time assessment) was undermined by other findings in the record showing she did not have limitations of range of motion as noted by Ms. Bockrath. (*See*, *e.g.*, Tr. 721, 1370). The ALJ also addressed Plaintiff's ability to sit in general terms, since the sedentary work determined by the ALJ assumes an ability to sit for most of the day.

As for the more specific 20-minute sitting and "no stooping" limitations offered by Ms. Bockrath, the ALJ plainly stated that he was not adopting Ms. Bockrath's "exact

12

[nonexertional] limitations" based upon the "the overall evidence as a whole." (Tr. 28). In contrast to Ms. Bockrath, the two agency physicians opined that Plaintiff could occasionally stoop and did not include any limitations on the amount of time that Plaintiff could sit at one time. The RFC as determined was consistent with their opinions. In addition, Plaintiff's argument regarding Ms. Bockrath's specific sitting limitation suggests an internal inconsistency in her report that does not necessarily exist. In making the argument, Plaintiff cites and applies language from sitting regulations for light work, (Doc. 13 at 26), rather than the appropriate regulation applicable to sedentary work. *Compare* 20 C.F.R. § 404.1567(b) with 20 C.F.R. § 404.1567(a). As the Commissioner points out, however, despite limiting Plaintiff to 20-minute intervals of sitting, Ms. Bockrath also indicated that Plaintiff can sit for sixty-eight percent of an eight-hour day, (Tr. 1427), which translates to nearly 5.5 hours and is consistent with the sedentary work level she found.

Last, the undersigned rejects Plaintiff's third assertion – that the ALJ improperly over-focused on Ms. Bockrath's opinions regarding upper extremity limitations in reaching, handling and fingering. The fact that the ALJ specifically called out the complete lack of support for those particular nonexertional limitations is not grounds for reversal. In context, the citation illustrates by way of one example of the lack of "supportability" of Ms. Bockrath's opinions and helps explain why the ALJ declined to adopt all of her "exact" nonexertional limitations. Therefore, the ALJ's conclusion that Plaintiff can perform a limited amount of work at the sedentary exertional level is substantially supported. (*See* Tr. 28., citing numerous exhibits).

### III. Conclusion and Recommendation

For the reasons stated, substantial evidence supports the nondisability determination in this case. Accordingly, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

<u>/s Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Magistrate Judge

**SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CARRIE S., | Case No. 1:20-cv-1026 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).